```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 10, 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SIMMTECH CO., LTD.,                                         :
                                                            :
                              Plaintiff,                    :
              -v-                                           :         13-cv-6768 (KBF)
                                                            :
                                                            :         OPINION & ORDER
CITIBANK, N.A. et al.,                                      :
                                                            :
                              Defendants.                   :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

Pending before the Court is defendants' motion to dismiss the Second Amended Complaint (the "SAC") on a variety of grounds.  (ECF No. 74.)  For the reasons set forth below, the SAC is dismissed under the doctrine of <u>forum non conveniens</u>.

I.     BACKGROUND

In this action, a Korean exporter, Simmtech Co., Ltd. ("Simmtech" or "plaintiff"), seeks damages allegedly incurred in connection with a series of currency transactions with Citibank Korea Inc. ("CKI"), a Korean bank.[1]  According to the Second Amended Complaint, Simmtech purchased from CKI a series of financial products known as KIKOs (acronym for "knock-in knock-out") that were marketed as hedges against fluctuations in the exchange rate between the U.S. dollar and the Korean won.  (<u>See</u> SAC ¶ 3, ECF No. 73.)  Simmtech alleges that the KIKOs were in

---

[1] This action was originally filed in state court.  It was removed to this Court on September 25, 2013.  (ECF No. 1.)  Plaintiff filed an amended complaint on December 10, 2013 (ECF No. 23) and a Second Amended Complaint on November 21, 2014 (ECF No. 73).

fact "highly complex, exotic, risky foreign exchange investment vehicles that exposed [it] to virtually unlimited liability." (Id. ¶ 10.) Plaintiff seeks to recover over $73 million in damages.

Simmtech has already sued CKI for misconduct in connection with the same transactions in Korea. On October 2, 2014, the Seoul Central District Court issued a written order entering judgment in favor of CKI on all of Simmtech's claims. After considering the parties' submissions, making factual findings, and reviewing the relevant law, the court determined that the relief sought against CKI was "unfounded." (ECF No. 76 Ex. 2 at 36.)[2]

The defendants in this action are CKI's corporate affiliates in the United States. In essence, the claims in the SAC are based on the theory that, in selling KIKOs to Simmtech, CKI acted as defendants' agent. Specifically, plaintiff alleges that defendants instructed CKI "to work its way into the trust of its potential victims (such as Simmtech)" and then abuse that trust by concealing the risks of KIKOs. (Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint ("Pl.'s Opp.") at 2-3, ECF No. 77.) Plaintiff also alleges that defendants entered into reverse transactions with CKI, effectively transferring CKI's profits from the KIKO transactions to themselves. (See SAC ¶ 65.)

II.  LEGAL STANDARDS

The decision to dismiss an action "by reason of forum non conveniens is confided to the sound discretion of the district court." Pollux Holding Ltd. v. Chase

---

[2] This action was stayed while the proceedings in the Seoul Central District Court were ongoing. (See ECF No. 49.) The stay was lifted on November 10, 2014. (ECF No. 66.)

Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003).  The exercise of this discretion is guided by the three-step analysis delineated in Iragorri v. United Technologies Corp., 274 F.3d 65 (2d Cir. 2001):

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (citations omitted).

At step one, there is "a strong presumption in favor of the plaintiff's choice of forum."  Id. at 154 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981)) (internal quotation marks omitted).  "Indeed, it is generally understood that, 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).  However, despite this general presumption, courts recognize that the degree of deference given to a plaintiff's choice of forum can vary with the circumstances.  Id.  Generally, "the greatest deference is afforded a plaintiff's choice of its home forum, while 'less deference' is afforded a foreign plaintiff's choice of a United States forum."  Id. (citations omitted).  The reason is that when a foreign plaintiff sues in the United States, "it is more likely that forum-shopping for a higher damage award or for some other litigation advantage was the motivation for plaintiff's selection."  Pollux, 329 F.3d at 71.  "Even absent those forum-shopping

3

considerations, there still is no reason to assume a U.S. forum is convenient for a foreign plaintiff's suit." Id.

These are not hard-and-fast rules, however. Rather, "the degree of deference assigned to plaintiff's choice depends on the specific facts of the case and may be viewed as operating along a 'sliding scale,'" id.:

> The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens. . . . On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts.

Norex, 416 F.3d at 154-55 (quoting Iragorri, 274 F.3d at 71-72).

Factors considered in determining whether a forum choice was likely to have been motivated by convenience include:

> [1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience or expense.

Id. at 155 (quoting Iragorri, 274 F.3d at 72). Among the factors indicative of forum shopping are:

> [1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or

4

> the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum.

Id. (quoting Iragorri, 274 F.3d at 72).

At step two of the Iragorri three-step analysis, the court considers whether the alternative forum proposed by the defendants is "adequate." "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Pollux, 329 F.3d at 75 (citations omitted). "The alternative forum is not inadequate simply because it does not afford plaintiffs the identical causes of action or relief available in the plaintiffs' chosen forum." Esheva v. Siberia Airlines, 499 F. Supp. 2d 493, 498 (S.D.N.Y. 2007) (citing Norex, 416 F.3d at 158).

Finally, at step three, the court balances the private and public interests implicated in the choice of forum. The private interest factors include:

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Gross v. British Broad. Corp., 386 F.3d 224, 232 (2d Cir. 2004) (quoting Gilbert, 330 U.S. at 508). The public interest factors include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Id. at 233 (quoting Piper Aircraft, 454 U.S. at 241 n.6).  An action should be dismissed for forum non conveniens "only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."  Iragorri, 274 F.3d at 74-75.

III. DISCUSSION

Applying the Iragorri factors, Simmtech's forum choice is entitled to substantially reduced deference in this case.  To start, Simmtech is a Korean corporation without any apparent ties to New York, making it more likely that it was motivated by "forum-shopping for a higher damage award or for some other litigation advantage" in deciding to file this action in New York.  See Pollux, 329 F.3d at 71; see also id. ("Even absent those forum-shopping considerations, there still is no reason to assume a U.S. forum is convenient for a foreign plaintiff's suit.").

Further, the KIKO transactions that underlie Simmtech's claims were negotiated and executed in Korea with a Korean bank (CKI).  Witnesses to these transactions are likely in Korea (and speak only Korean).  Documentary evidence as to what representations CKI made to Simmtech in connection with these transactions is also likely in Korea (and written in Korean).  In fact, plaintiff acknowledged at oral argument on a prior motion that (1) there will be no witnesses at Simmtech who claim to have had a conversation with anyone in New York, and (2) no documents were exchanged between Simmtech and defendants.  (See 2/14/14 Tr. at 19:23-20:3, ECF No. 50.)[3]  Finally, plaintiff does not contend that appropriate

---

[3] Simmtech argues that the "initial design and global marketing of the KIKOs[] took place in New York."  (Pl.'s Opp. at 4; see also id. at 5 ("Most of the evidence, including the design of the KIKOs,

6

legal assistance is unavailable to it in Korea.  Indeed, plaintiff has already brought (and lost) a lawsuit arising out of the same transactions in Korea.

Plaintiff's decision to bring this action in New York was very likely motivated by forum-shopping considerations.  In fact, Simmtech itself has repeatedly acknowledged that a U.S. forum offers better discovery tools and greater damages. (See ECF No. 33 at 6 ("[T]he unique nature of most of the New York common law claims requires access to U.S. discovery tools."); id. at 3 ("[O]nly very limited discovery mechanisms are available in Korea."); Pl.'s Opp. at 7 ("Discovery would . . . be inadequate in Korea."); 2/14/14 Tr. at 20-21 (acknowledging that punitive damages may be unavailable in Korea but asserting that such damages are not Simmtech's "primary focus"); Pl.'s Opp. at 6 (explaining that the exemplary damages sought in this action are unavailable in Korea).)

Korea is plainly an adequate alternative forum.  Defendants have explicitly consented to personal jurisdiction in Korea (see Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiff's Second Amended Complaint ("Defs.' Br.") at 8),[4] establishing amenability to service of process.  See, e.g., Gross, 386 F.3d at

---

their creation, their marketing, their drafting and issuance, and their instructions for their sale and marketing . . . is in New York." (citations omitted)).)  However, such evidence, to the extent it is relevant, is likely electronic in nature and readily accessible in Korea.

[4] Defendants made clear that they consent to jurisdiction in Korea in their opening brief. Simmtech's repeated assertions to the contrary in its opposition brief are therefore puzzling.  (See Pl.'s Opp. at 3 ("[A]lthough Citi implies this case should be litigated in Korea, it has not consented to jurisdiction there . . . ."); id. at 4 ("[I]t is unclear whether a Korean court would even have jurisdiction over Citi . . . . "); id. at 5 ("New York is the only forum where all defendants are subject to personal jurisdiction." (emphasis in original)); id. at 6 ("Defendants have no presence in Korea; it is not clear that they are amenable to service of process there . . . .").)

Defendants' consent as stated extends only to plaintiff's KIKO-related claims (Counts 1 through 10).  Defendants argue that Counts 11 through 14 should be dismissed under the rule against claim splitting, because they arise out of the same alleged misconduct—manipulation of

231 ("The BBC is unquestionably amenable to process in England and in fact has consented to be sued there."). Moreover, plaintiff's Korean action against CKI—which arises out of the same KIKO transactions at issue here—indicates that Korea "permits litigation of the subject matter of the dispute." Pollux, 329 F.3d at 75. The potential unavailability of certain claims or discovery tools does not render Korea an inadequate forum. See Esheva, 499 F. Supp. 2d at 498 ("The alternative forum is not inadequate simply because it does not afford plaintiffs the identical causes of action or relief available in the plaintiffs' chosen forum." (citing Norex, 416 F.3d at 158)); Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 982 (2d Cir. 1993) ("[T]he unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." (quoting Borden, Inc. v. Meiji Milk Products Co., 919 F.2d 822, 829 (2d Cir. 1990)) (internal quotation marks omitted)); Potomac Capital Inv. Corp. v. Koninklijke Luchtvaapt Maatschapplj N.V., No. 97CIV.8141(AJP)(RLC), 1998 WL 92416, at *5 (S.D.N.Y. Mar. 4, 1998) ("[W]ere a forum considered inadequate merely because it did not provide for federal style discovery, few foreign forums could be considered 'adequate'—and that is not the law." (citation omitted)).

Finally, the private and public interest factors collectively weigh in favor of dismissing this case on forum non conveniens grounds. As explained above, the KIKO transactions were negotiated and executed entirely in Korea. As a result,

---

certain foreign currency exchange rates—as the claims currently litigated in a class action before Judge Schofield. The Court does not decide this issue one way or the other. The Korean court will determine how to proceed with the claims in counts 11 through 14 should plaintiff decide to reassert them there.

8

this Court—unlike a Korean court—lacks "relative ease of access" to the witnesses and documents surrounding the transactions that form the basis for all of plaintiff's claims. Key witnesses would have to be subpoenaed from Korea and, even if some of these witnesses agreed to appear voluntarily, the parties would incur significant costs in arranging their appearances in New York. Finally, Korea has a significant interest in adjudicating an action in which all claims arise, as they do here, from financial transactions between two Korean entities in Korea. Indeed, Korea's interest in this action is particularly strong given that a Korean court has already decided Simmtech's claims for damages arising out of the very transactions at issue in this action. By contrast, New York has only a generalized interest in overseeing the conduct of the defendant entities. It would be unfair to burden citizens in this district with jury duty to adjudicate this case.[5]

      Plaintiff's main argument against dismissal on <u>forum non conveniens</u> grounds appears to be that "each defendant resides here." (Pl.'s Opp. at 4.) However, the Second Circuit has specifically rejected "the blanket assertion that a plaintiff's choice of forum deserves presumptive deference simply because the chosen forum is defendant's home forum." <u>Pollux</u>, 329 F.3d at 74. As the Second Circuit explained:

> Bearing in mind that litigants rarely are concerned with promoting their adversary's convenience at their own expense, a plaintiff's choice of the defendant's home forum over other fora where defendant is

---

[5] The sole public interest factor favoring litigation in New York is "the avoidance of unnecessary problems . . . in the application of foreign law." A Korean court presiding over this action would likely apply New York law. However, this one factor is insufficient to tilt the balance in Simmtech's favor. In any event, the Court has no reason to believe that Korean courts cannot apply foreign law competently.

amenable to suit and to which the plaintiff and the circumstances of the case are much more closely connected suggests the possibility that plaintiff's choice was made for reasons of trial strategy. Accordingly, a plaintiff's choice to initiate suit in the defendant's home forum—as opposed to any other where the defendant is also amenable to suit—only merits heightened deference to the extent that the plaintiff and the case possess <u>bona fide</u> connections to, and convenience factors favor, that forum.

<u>Id.</u> Here, heightened deference is inappropriate because plaintiff's forum choice appears to have been made for strategic reasons, rather than convenience. As explained above, plaintiff does not have any connection to this district, and Korea is by a far a more convenient forum.[6]

IV.   CONCLUSION

For the reasons set forth above, this action is dismissed under the doctrine of <u>forum non conveniens</u>. The Clerk of Court is directed to terminate the motion at ECF No. 74 and to terminate this action.

SO ORDERED.

Dated:   New York, New York
         February 10, 2015

_____
KATHERINE B. FORREST
United States District Judge

---

[6] Indeed, this action is similar to <u>Pollux</u> in many relevant respects. In <u>Pollux</u>, Liberian corporations sued a New York bank in the Southern District of New York for damages arising from purchases of certain notes in London. The district court dismissed the action on <u>forum non conveniens</u> grounds. The Second Circuit affirmed, specifically noting that "[t]he fact that New York is [the defendant's] home jurisdiction does not show that plaintiffs' decision to bring suit here was driven by considerations of convenience." <u>Pollux</u>, 329 F.3d at 74. Here, as in <u>Pollux</u>, plaintiff's forum choice does not merit substantial deference because Simmtech and this action "have only a faint connection to the United States." <u>Id.</u>