# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

SIMMTECH CO., LTD.,

                          Plaintiff,

        v.

CITIBANK, N.A., CITIGROUP, INC., CITIBANK
OVERSEAS INVESTMENT CORPORATION,
CITICORP HOLDINGS INC. and CITIGROUP
GLOBAL MARKETS INC.,

                          Defendants.

No. 13 Civ. 6768 (KBF) (JLC)

---

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF RENEWED MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................................... ii

I. PLAINTIFF'S CLAIMS ARE BARRED BY FEDERAL PRINCIPLES OF *RES JUDICATA*, COMITY, AND COLLATERAL ESTOPPEL ............................................ 1

    A.    The New Fraud Claims Are Barred by *Res Judicata* ............................................ 1

    B.    Plaintiff's Original Claims Are Also Barred ....................................................... 2

II. PLAINTIFF'S ORIGINAL CLAIMS ARE UNTIMELY ................................................ 4

III. THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM .................... 7

    A.    Plaintiff's Attempts to Plead Vicarious Liability Fail ......................................... 7

    B.    Plaintiff Has Not Adequately Pleaded A Negligence Claim ............................... 10

    C.    Plaintiff's Fiduciary Duty Claims Fail ................................................................ 10

    D.    Plaintiff's Original Fraud Claims Are Insufficiently Pleaded ............................ 12

    E.    Plaintiff's Tortious Interference With Contract Claim Fails ............................... 13

    F.    Plaintiff's Equitable Claims Fail ........................................................................ 14

    G.    Plaintiff's New Fraud Claims Fail ...................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aegon N Sec. Litig.*,
  2004 WL 1415973 (S.D.N.Y. June 23, 2004) ......................................................12

*Agence France Presse v. Morel*,
  769 F. Supp. 2d 295 (S.D.N.Y. 2011)................................................................11

*Alfadda v. Fenn*,
  966 F. Supp. 1317 (S.D.N.Y. 1997)......................................................................3

*Am. Med. Ass'n v. United Healthcare Corp.*,
  588 F. Supp. 2d 432 (S.D.N.Y. 2008)................................................................13

*Anschutz Corp. v. Merrill Lynch & Co.*,
  690 F.3d 98 (2d Cir. 2012)................................................................................10

*Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.*,
  888 F. Supp. 2d 508 (S.D.N.Y. 2012)................................................................10

*Bank of New York v. Cheng Yu Corp.*,
  413 N.Y.S.2d 471 (2d Dep't 1979)....................................................................11

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
  866 F. Supp. 2d 257 (S.D.N.Y. 2012)................................................................11

*Cameron v. Church*,
  253 F. Supp. 2d 611 (S.D.N.Y. 2003)..............................................................1, 4

*DeAngelis v. Corzine*,
  17 F. Supp. 3d 270, 286 (S.D.N.Y. 2014) ...........................................................9

*Emergent Capital Inv. Mgmt. v. Stonepath Grp.*,
  343 F.3d 189 (2d Cir. 2003)..............................................................................12

*Falso v. Dansville Police Dep't*,
  616 F. App'x 11 (2d Cir. 2015) ...........................................................................4

*Federated Dep't Stores, Inc. v. Moitie*,
  452 U.S. 394 (1981)............................................................................................2

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  74 F. Supp. 3d 581 (S.D.N.Y. 2015)....................................................................2

*Geiger v. Am. Tobacco Co.*,
    674 N.Y.S.2d 775 (2d Dep't 1998) ...................................................................9

*Holloway v. King*,
    161 F. App'x 122 (2d Cir. 2005) ....................................................................13

*Hurst v. Socialist People's Libyan Arab Jamahiriya*,
    474 F. Supp. 2d 19 (D.D.C. 2007) ...............................................................3, 4

*In re ICN/Viratek Sec. Litig.*,
    1996 WL 164732 (S.D.N.Y. April 9, 1996) ....................................................8

*Kaufman v. Cohen*,
    760 N.Y.S.2d 157 (1st Dep't 2003) .................................................................6

*Korea Life Ins. v. Morgan Guaranty Trust Co.*,
    269 F. Supp. 2d 424 (S.D.N.Y. 2003) .............................................................8

*Laub v. Faessel*,
    745 N.Y.S.2d 534 (1st Dep't 2002) ...............................................................15

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ..........................................................................13

*Lombard v. Booz-Allen & Hamilton, Inc.*,
    280 F.3d 209 (2d Cir. 2002) ..........................................................................10

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
    735 F.3d 395 (2d Cir. 2014) ............................................................................2

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    256 F.R.D. 586 (N.D. Ill. 2009) ......................................................................2

*Marino v. Grupo Mundial Tenedora, S.A.*,
    810 F. Supp. 2d 601 (S.D.N.Y. 2011) ...........................................................11

*Monahan v. N.Y.C Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000) ............................................................................4

*Morris v. N.Y. Dep't of Taxation & Fin.*,
    623 N.E.2d 1157 (N.Y. 1993) .........................................................................7

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010) .........................................................................................4

*Natural Organics, Inc. v. Smith*,
    2006 WL 2042489 (Sup. Ct. May 24, 2006) .................................................11

*Ostano Commerzanstalt v. Telewide Sys. Inc.*,
    794 F.2d 763 (2d Cir. 1986)..............................................................................8

*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*,
    478 F. Supp. 2d 496 (S.D.N.Y. 2007)...........................................................14

*Pimpinello v. Swift*,
    170 N.E. 530 (N.Y. 1930)...............................................................................11

*Precedo Capital Grp. v. Twitter, Inc.*,
    33 F. Supp. 3d 245, 254 (S.D.N.Y. 2014) .......................................................9

*Reilly Green Mountain Platform Tennis v. Cortese*,
    960 N.Y.S.2d 341 (Sup. Ct. 2007)...................................................................6

*Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*,
    2015 WL 1433320 (S.D.N.Y. Mar. 30, 2015) .................................................3

*Robinson v. Allstate*,
    706 F. Supp. 2d 320 (W.D.N.Y. 2010) ............................................................1

*Rosemeier v. Schenker Int'l.*,
    895 F. Supp. 65 (S.D.N.Y. 1995) ....................................................................7

*Saud v. Bank of N.Y.*,
    929 F.2d 916 (2d Cir. 1991)..............................................................................4

*In re Sharp Int'l Corp.*,
    403 F.3d 43 (2d Cir. 2005)..............................................................................12

*Smith Barney, Harris Upham & Co. v. Luckie*,
    665 N.Y.S.2d 74 (1st Dep't 1997)....................................................................6

*Spinap Corp. v. Cafagno*,
    756 N.Y.S.2d 86 (2d Dep't 2003).....................................................................7

*Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc.*,
    322 F. Supp. 2d 482 (S.D.N.Y. 2004)............................................................15

*Trueforge Global Mach. Corp. v. Viraj Grp.*,
    923 N.Y.S.2d 146 (2d Dep't 2011).................................................................14

*Twersky v. Yeshiva Univ.*,
    993 F. Supp. 2d 429 (S.D.N.Y. 2014)..............................................................7

*United States v. Tohono O'Odham Nation*,
    563 U.S. 307 (2011).........................................................................................3

*Watson v. Melnikoff,*
  866 N.Y.S.2d 96 (Sup. Ct. 2008) .................................................................11

*Woori Bank v. Citigroup Glob. Mkts., Inc.,*
  609 F. App'x 696 (2d Cir. 2015). .............................................................5, 6

*Woori Bank v. Merrill Lynch,*
  542 F. App'x 81, 82 (2d Cir. 2013). .............................................................6

*XL Specialty Ins. v. Otto Naumann, Ltd.,*
  2015 WL 1499208 (S.D.N.Y. Mar. 31, 2015) ............................................5

**Rules**

Fed. R. Civ. P. 8(d)(3) ........................................................................................5

Fed. R. Civ. P. 9(b) ..........................................................................................12

**Other Authorities**

Restatement (Second) of Torts § 876(b) (1977) ...............................................12

Plaintiff's Opposition Brief makes clear that this lawsuit is nothing more than an elaborate effort to relitigate claims brought and lost in Korea against CKI.  Plaintiff has filed a 1,096-paragraph Second Amended Complaint ("SAC") asserting fourteen claims for relief, all in a transparent effort to hold Defendants responsible for the alleged conduct of CKI.  The length of the SAC is an effort to camouflage the fact that Plaintiff seeks a remedy for old conduct without any particularized attempt to tie that conduct to Defendants (despite having the benefit of a full trial in Korea).  Accordingly, Defendants seek a complete dismissal with prejudice.[1]

I.  **PLAINTIFF'S CLAIMS ARE BARRED BY FEDERAL PRINCIPLES OF *RES JUDICATA*, COMITY, AND COLLATERAL ESTOPPEL**

A.  **The New Fraud Claims Are Barred by *Res Judicata***

Simmtech's New Fraud Claims, which allege that Defendants manipulated certain WM/Reuters foreign exchange rates, arise from the same subject matter as the putative class action it pursued and lost before Judge Schofield (the "FX Action").  Plaintiff argues that the claims asserted in each action are different.  (Opp.Br. 6-7.)  But the "transactional approach" to *res judicata* "bars cases that arise from the same operative nucleus of fact," no matter if the theories of recovery are different.  *Cameron v. Church*, 253 F. Supp. 2d 611, 619 (S.D.N.Y. 2003).  The New Fraud Claims and the FX Action claims all arise out of Defendants' purported manipulation of the WM/Reuters rates, and *res judicata* applies.  *Id.*

Plaintiff further contends that *res judicata* should not apply because this action was filed before the FX Action.  (Opp.Br. 6.)  But "[t]he relevant date for purposes of res judicata is the date of the prior *judgment*, not the date on which the prior lawsuit was commenced."  *Robinson v. Allstate*, 706 F. Supp. 2d 320, 326 (W.D.N.Y. 2010).  In any event, Simmtech filed the FX Action on November 8, 2013 (Kaplan Decl. Ex. 6), but did not add the

---

[1] Plaintiff has not identified any facts that it would allege in a new complaint.  A further amendment would be futile.

New Fraud Claims to this action until November 21, 2014.  Simmtech also argues that the judgment dismissing the FX Action with prejudice was not a final judgment on the merits because this Court did not have subject matter jurisdiction over a federal claim.  (Opp.Br. 6.) But Judge Schofield did not dismiss Simmtech's claims on subject matter jurisdiction or preemption grounds.  *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581 (S.D.N.Y. 2015).  Indeed, a "dismissal for failure to state a claim . . . is a 'judgment on the merits.'"  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981).  And the Second Circuit has confirmed that dismissals under the Foreign Trade Antitrust Improvements Act go to the merits of the claim rather than to subject matter jurisdiction.  *See Lotes Co. v. Hon Hai Precision Indus. Co.*, 735 F.3d 395, 408 (2d Cir. 2014).

Finally, Simmtech contends, without citing any authority, that "[w]ith res judicata, class actions are different," and recycles arguments opposing Defendants' prior motion to dismiss on claim-splitting grounds.  (Opp.Br. 7.)  But Defendants do not make a claim-splitting argument here.  Even if Plaintiff's claim-splitting arguments were applicable, *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 597 (N.D. Ill. 2009), relied upon by Plaintiff, is inapposite.  It is "the special nature of class actions—representation in absentia and often without notice—[that] requires" an exception to the claim-splitting rule.  *Id.*  That same concern does not apply to the named party that chose to bring the class action.[2]

### B.    Plaintiff's Original Claims Are Also Barred

Plaintiff does not contest that the Court should recognize the Korean court's judgment as a matter of comity under federal law.  (Def.Br. 7-8; Opp.Br. 4.)  Nor does Plaintiff

---

[2] Simmtech further argues that "[i]t would have been inappropriate for the new claims in the present action to be dismissed and then brought in the FX Action" because "[a] party cannot bring side claims in a class action." (Opp.Br. 7.)  But the existence of facts that might have precluded Simmtech from acting as a class representative in the FX Action have no bearing on whether the New Fraud Claims are barred by *res judicata*.

argue that the claims it seeks to assert here are substantively different from the claims it asserted and lost in Korea.  Rather, Plaintiff's primary argument is its speculation that the Korean court would have lacked jurisdiction over Defendants.  (Opp.Br. 8-9.)  But whether the Korean court had jurisdiction over **Defendants** is irrelevant to the question of whether the *res judicata* effect of the Korean judgment bars Simmtech's claims here.  Simmtech misreads the basic *res judicata* requirement that the court rendering the ***earlier*** judgment have jurisdiction over the party ***against whom*** *res judicata* is asserted.  *See United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011).  There is no requirement that a party seeking to assert *res judicata* in a later proceeding also have been subject to the rendering court's jurisdiction.

Plaintiff concedes that it would be barred from bringing a new claim against CKI.  In an attempt to evade that bar, Plaintiff argues that *res judicata* should not apply to the claims it asserts against CKI's affiliates because, under New York law, the preclusive effect of a foreign judgment has no greater effect than in the country in which it was rendered.  (Opp.Br. 5, 8, 10.)  But this misunderstands the argument.  All of Simmtech's claims are, in one way or another, derivative of CKI's conduct.  And Simmtech should not be allowed to side-step the admitted bar to relitigating these claims by asserting them against CKI's affiliates.  Jurisdiction in this case is based upon the Edge Act, and so ***federal*** collateral estoppel and *res judicata* principles apply.  *See Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 32 (D.D.C. 2007).[3]  Indeed, the purpose of Edge Act jurisdiction is to provide for "predictable uniformity of adjudication supervised in the federal courts."  *Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, 2015 WL 1433320, at *3 (S.D.N.Y. Mar. 30, 2015).  Federal preclusion law permits

---

[3] Plaintiff's citation to *Alfadda v. Fenn*, 966 F. Supp. 1317, 1326 (S.D.N.Y. 1997), for the proposition that federal courts should apply "New York's law of issue preclusion to determine the preclusive effect of foreign country judgments on state law claims," *id.*, is inapposite.  That court applied ***federal*** collateral estoppel law to dismiss the plaintiff's federal claims, then dismissed the pendent state law claims for lack of subject matter jurisdiction.  *Id.* at 1332.  Thus, any statement regarding the application of collateral estoppel to state law claims is not relevant.

3

courts to give "greater preclusive effect to a judgment in a foreign state than would be given in the courts of that state." *Hurst*, 474 F. Supp. 2d at 32-33 (quoting Restatement (Third) Foreign Relations Law § 481, cmt. c). And the Court should do so here, where Simmtech had a full and fair opportunity to litigate its claims in Korea.[4]

Plaintiff repeatedly contends that *res judicata* should not apply, because "[t]o the extent that Plaintiff did not even know of Defendants' involvement in the wrongdoing until 2013, any claims specifically against Defendants that would not have applied against CKI would likewise have not been capable of being brought." (Opp.Br. 8, 10.) Simmtech's only support for this argument is its conclusory statement that the alleged revelation of "reverse transactions" somehow "fundamentally altered Plaintiff's understanding of the case." (Opp.Br. 10.) But "[a]s a general rule, newly discovered evidence does not preclude the application of *res judicata*." *Saud v. Bank of N.Y.*, 929 F.2d 916, 920 (2d Cir. 1991). Additionally, this argument has no bearing on the collateral estoppel analysis. *See Cameron*, 253 F. Supp. 2d at 618.[5]

## II.   PLAINTIFF'S ORIGINAL CLAIMS ARE UNTIMELY

Courts routinely dismiss complaints as time-barred where, as here, plaintiff has pleaded itself out of a claim. *See, e.g.*, *Falso v. Dansville Police Dep't*, 616 F. App'x 11, 11-12 (2d Cir. 2015). Simmtech's sole argument that its tort claims are timely under Korea's three-year limitations period is that it did not "bec[o]me aware" until 2013 that it was Defendants' alleged misconduct that damaged Simmtech. (Opp.Br. 13.)[6] This argument controverts

---

[4] The application of federal collateral estoppel and *res judicata* principles in Edge Act cases urged here is consistent with the trend in federal jurisprudence to restrict access to federal courts for alleged wrongs committed primarily outside of the U.S.—even in the face of allegations that deceptive conduct occurred, and misrepresentations were made, in the U.S. *See, e.g.*, *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010).

[5] Plaintiff insinuates that Defendants are not in privity with CKI. (Opp.Br. 5.) But the privity requirement relates only to whether the prior action involved the *plaintiff* or those in privity with it, not whether the party asserting *res judicata* was present in the prior action. *See Monahan v. N.Y.C Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

[6] In making this argument, Simmtech relies heavily on the Korean-language (without accompanying English translation) Declaration of Young Koo Kim. None of the unpleaded facts offered in that Korean-language

4

Simmtech's apparent agency theory, in support of which Simmtech claims to have known of Defendants' purported role in the KIKOs prior to entering into them.  (*See, e.g.*, SAC ¶¶ 131, 134, 307.)  Simmtech attempts to have it both ways—claiming that it knew enough about Defendants' involvement to believe that CKI was their agent, yet at the same time, was unaware of any damages resulting from Defendants' alleged conduct—by arguing that it is allowed to plead ***its own knowledge*** in the alternative.  (Opp.Br. 11, 13.)  But Simmtech "cannot . . . have its cake and eat it too.  Although Rule 8(d)(3) allows parties to plead alternative legal theories, it does not permit inconsistent *assertions of facts* within the allegations."  *XL Specialty Ins. v. Otto Naumann, Ltd.*, 2015 WL 1499208, at *2 (S.D.N.Y. Mar. 31, 2015).  This is particularly the case when Simmtech is trying to plead inconsistent facts about what it knew and when.

Simmtech relies on *Woori Bank v. Citigroup Glob. Mkts., Inc.*, for the proposition that claims do not accrue under Korean law until a plaintiff "is practically and specifically aware of facts sufficient to state [a] claim" for relief.  609 F. App'x 696 (2d Cir. 2015).  (Opp.Br. 12.)  *Woori* held that the Korean statute of limitations accrues once a plaintiff is "practically and specifically aware" of each element of its claim, including (1) the tortfeasor's identity, (2) the alleged wrongful conduct, (3) the existence of damages, and (4) a connection between the alleged wrongful conduct and the damages.  *Woori*, 609 F. App'x at 699.  If Simmtech's agency allegations are accepted as true at this stage, Simmtech was aware of Defendants' identities when it first entered into the KIKO transactions in 2006.  (Def.Br. 11-12.)  Simmtech was also aware of Defendants' alleged wrongful conduct, its damages, and a connection between the alleged wrongful conduct and the damages by no later than January 2009, if not earlier.  (Def.Br. 12.)  Indeed, all of Simmtech's original claims (Counts 1-10) are based on alleged conduct and damages that it was aware of long before it learned of the so-called "reverse transactions."

declaration affects the limitations analysis.

Nothing about the "reverse transactions" affected Simmtech's alleged belief all along that CKI was acting as Defendants' agent.  (SAC ¶ 306-07.)  Given these allegations, this case is different from *Woori*, where the court held that the plaintiff lacked *any* specific information about the defendant that would allow it to adequately plead its claims.  *Woori*, 609 F. App'x at 699, 702.  By contrast, Simmtech is in a similar position to the plaintiff in *Woori Bank v. Merrill Lynch*, where the plaintiff "actually and specifically recognize[d] [its] claim for damages" against the defendant, yet sat on its rights for years.  542 F. App'x 81, 82 (2d Cir. 2013).

Plaintiff's unjust enrichment claims are time-barred because it did not seek to rescind the KIKOs during the three-year period required under Korean law to have a timely claim for unjust enrichment.  (Opp.Br. 14.)  Simmtech's argument that unjust enrichment claims under New York and Korean law are not identical is a *non sequitur*.  Under the borrowing statute, this Court should apply the limitations period of the most closely analogous foreign-law claim.  *Smith Barney, Harris Upham & Co. v. Luckie*, 665 N.Y.S.2d 74, 75-76 (1st Dep't 1997).

Nearly all of Plaintiff's claims are time-barred under New York law as well.  Plaintiff's argument that its breach of fiduciary duty claims are subject to a six-year, rather than three-year, limitations period (Opp.Br. 15) "turns on the viability of [plaintiff's] fraud" claim.  *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 165 (1st Dep't 2003).  As explained below, Plaintiff's fraud claim against Defendants fails, thus the three-year limitations period for Plaintiff's breach of fiduciary duty claims applies, and it ended by no later than April 16, 2011.  (Def.Br. 14.)

It is unclear whether Plaintiff is now asserting a claim for negligence or for negligent misrepresentation, as its citation to *Reilly Green Mountain Platform Tennis v. Cortese*, 960 N.Y.S.2d 341 (Sup. Ct. 2007) suggests.  If Plaintiff's claim is for negligence, it is barred by the three-year limitations period.  (Def.Br. 13.)  If Plaintiff's claim is for negligent

misrepresentation then it has failed to state a claim.  *See* Section III.B., *infra*.

Plaintiff's tortious interference with contract claim is time-barred under New York's three-year limitations period.  (Def.Br. 14; Opp.Br. 15.)  A tortious interference claim accrues by no later than the date on which a plaintiff allegedly sustains an injury.  *Rosemeier v. Schenker Int'l.*, 895 F. Supp. 65, 66 (S.D.N.Y. 1995).  Plaintiff alleges that it began to sustain injuries as early as December 2008, but argues that its claim is timely because it continued to sustain injuries until March 2011.  (Opp.Br. 15.)  But "tortious interference with contract is not a continuing tort."  *Spinap Corp. v. Cafagno*, 756 N.Y.S.2d 86, 87 (2d Dep't 2003).  Therefore the claim accrued in December 2008, making it untimely.[7]

## III.    THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM[8]

### A.    Plaintiff's Attempts to Plead Vicarious Liability Fail

Plaintiff is attempting to hold Defendants liable for CKI's conduct.  Whether it calls its theory "unwitting agency" or "real party in interest," Plaintiff is attempting to disregard the corporate separateness of legal entities, without satisfying the high burden for doing so.  *E.g., Morris v. N.Y. Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1160-61 (N.Y. 1993) (must show "complete domination of the corporation" with respect to the transaction in question and that "such domination was used to commit a fraud or wrong against the plaintiff which result in plaintiff's injury").  The SAC does not remotely allege facts showing the type of domination and control with respect to the KIKOs required to hold Defendants liable for CKI's alleged conduct.

Plaintiff alleges that Defendants are liable for CKI's conduct because they were

---

[7] Plaintiff has not adequately alleged equitable estoppel for tolling purposes because it has not alleged that Defendants took any action "specifically directed at preventing [it] from bringing suit." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014).  Contrary to Plaintiff's argument (Opp.Br. 15-16), the alleged self-concealing nature of Defendants' corporate structure or purported actions does not give rise to equitable estoppel. *Id.* at 444-45.  Plaintiff also contends that its claims are timely because "Defendants were the real party in interest." (Opp.Br. 17.)  But Plaintiff offers no authority to support this novel proposition, or an explanation of its relevance.
[8] Plaintiff does not address Defendants' argument that the SAC does not satisfy Rule 8(a)(2)'s requirement that a complaint contain "a short and plain statement of the claim" (Def.Br. 17 n.7), which the prolix SAC surely does not.

the "real party in interest" in the KIKO transactions.  (Opp.Br. 17 (citing *Korea Life Ins. v. Morgan Guaranty Trust Co.*, 269 F. Supp. 2d 424, 445 (S.D.N.Y. 2003)).)  But *Korea Life* is markedly different.  In that case, two parties created special purpose entities and used an intermediary bank to effectuate transactions.  *Id.* at 427-31.  Defendants were counterparties to certain of the relevant transaction documents.  *Id.*  The court found that although the transactions were effectuated through the special purpose entities, the defendant was the "real party in interest" and thus was liable on plaintiff's contract claim.  *Id.* at 445-46.  Here, Simmtech dealt directly with CKI, a separately chartered bank regulated by Korean law, and Defendants were not a party to any contract with Simmtech.

Plaintiff's "indirect reliance" and "unwitting agency" theories (Opp.Br. 17-18) are unavailing.  Plaintiff cites *Ostano Commerzanstalt v. Telewide Sys. Inc.*, 794 F.2d 763, 766 (2d Cir. 1986) for the proposition that "Under the indirect reliance doctrine, Defendants are liable for misrepresentations and omissions because they intended them to be relied upon by Simmtech." (Opp.Br. 17.)  *Ostano* involved a circumstance where a defendant used a "middleman" to pass misrepresentations through to a specific third party.  *Ostano*, 794 F.2d at 765-66.  In contrast, Plaintiff here implicitly acknowledges that Defendants did not know that Simmtech even existed. (Opp.Br. 24.)  And CKI was no "middleman."  CKI is a separately organized financial institution regulated under Korean law that had a longstanding commercial relationship with Simmtech. Plaintiff's "unwitting agency" argument is also flawed because it contemplates a factual scenario that is contradicted by the SAC allegations.[9]  Here, Plaintiff does not allege that CKI acted as an

---

[9] Plaintiff relies on *In re ICN/Viratek Sec. Litig.*, 1996 WL 164732, at *6 (S.D.N.Y. April 9, 1996) for its argument that a defendant who directs another to make false statements can be primarily liable where the person making the false statement did not know of its falsity.  (Opp.Br. 18.)  But both the *ICN* case and the concept of unwitting agency are inapposite here; the SAC itself contains several allegations that CKI (the entity making the alleged false statement) did know of the falsity of the statement.  (SAC ¶¶ 741, 742, 754, 849, 1002.)

"unwitting agent," *i.e.*, that it did not know of the alleged falsity of Defendants' statements.[10]

Plaintiff incorrectly argues that CKI was acting as Defendants' agent (using actual, apparent, and hidden agency theories) in connection with the KIKO trades.  (Opp.Br. 19.) Actual agency requires allegations that the principal "maintained control over key aspects of the undertaking."  *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 286 (S.D.N.Y. 2014).  Plaintiff does not allege facts showing that Defendants controlled CKI ***with respect to the transactions at issue in this litigation***.  Plaintiff cites conclusory allegations of general control over Citigroup's operations (SAC ¶¶ 123-28, 176-79), but none shows that Defendants controlled the KIKO transactions at issue here.  *See DeAngelis*, 17 F. Supp. 3d at 286.

Alternatively, Plaintiff claims that CKI was the "apparent agent" of Defendants, which requires Plaintiff to allege "words or conduct *of the principal*, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction on behalf of the principal."  *Precedo Capital Grp. v. Twitter, Inc.*, 33 F. Supp. 3d 245, 254 (S.D.N.Y. 2014).  Plaintiff conclusorily alleges that it "relied on the 'Citigroup' name listed in advertising and marketing materials, which bolstered CKI's apparent authority to act on Defendants' behalf."  (SAC ¶¶ 131-34, 306-07.)  But those allegations say nothing about the specific transactions at issue here and are undermined by Plaintiff's conflicting allegation that "until recently, Plaintiff believed that the KIKO losses were the result of CKI's misconduct alone, rather than the product of Defendants' misconduct."  (SAC ¶ 886.)  Thus, Plaintiff could not have believed that CKI was the agent of any Defendant when it entered into the KIKOs.[11]

---

[10] Plaintiff argues that a parent company may be liable for its subsidiary's conduct under the doctrine of *respondeat superior* where it was directly involved in the design and marketing of a product (*i.e.*, the KIKOs).  (Opp.Br. 18 citing *Geiger v. Am. Tobacco Co.*, 674 N.Y.S.2d 775 (2d Dep't 1998).)  But *Geiger* does not even address the doctrine of *respondeat superior*, and certainly does not contradict the authority Defendants cite.

[11] Finally, Plaintiff twice claims to rely on the theory of "hidden" agency.  (Opp.Br. 14, 19.)  Plaintiff provides no authority for such a concept, and Defendants cannot find any.

**B.      Plaintiff Has Not Adequately Pleaded A Negligence Claim**

Plaintiff has not adequately alleged that there was a duty running from Defendants to Simmtech, which is required to support a negligence claim. *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002). An arm's-length transaction among contracting parties does not result in a "special duty" among the parties and "[w]here the only duty owed to the plaintiff arises from a valid contract, a negligence claim does not lie." *Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.*, 888 F. Supp. 2d 508, 512-13 (S.D.N.Y. 2012). Plaintiff argues that *Banco* is inapposite because it does not address "extra-contractual duties of care such as the duty not to misrepresent the risks associated with the KIKOs." (Opp.Br. 20). But Plaintiff cites no authority to support its theory of an extra-contractual duty of care arising in this commercial context. Nor does its theory make any sense because it would constitute an exception that would swallow the entire rule.

Plaintiff attempts to expand the allegations against CKI to include Defendants by arguing that Defendants owed it a duty because they were in a "special position of confidence and trust" and that they "acted in an advisory capacity" to Simmtech. (Opp.Br. 20-21.)[12] But nearly all of the allegations that Plaintiff cites state that it was CKI, not Defendants, acting as an advisor to Simmtech. (SAC ¶¶ 377, 379, 390, 407, 433.) The allegations specifically mentioning Defendants do not allege any role, independent of CKI. (SAC ¶¶ 21, 52, 55.)

**C.      Plaintiff's Fiduciary Duty Claims Fail**

Simmtech's Opposition Brief does not argue that the SAC adequately pleads a fiduciary relationship between Simmtech and Defendants. Rather, Simmtech argues that its representation in each KIKO Confirmation that CKI was "not acting as a fiduciary for or an

---

[12] Under New York law, negligent misrepresentation claims are limited to situations involving actual privity of contract between the parties or a relationship so close as to approach privity. *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114-15 (2d Cir. 2012).

advisor to [Simmtech] in respect of the Transaction" should be disregarded.  (Kaplan Decl. Ex.

1.)[13]  Courts routinely enforce such representations.  *See BNP Paribas Mortg. Corp. v. Bank of

Am., N.A.*, 866 F. Supp. 2d 257, 269 (S.D.N.Y. 2012).  Plaintiff argues that it should not be

bound by its own representation because: (1) the representation was in English; and

(2) Simmtech's signature was "procured by fraud."  (Opp.Br. 21-22.)  These arguments fail.

   The general rule, as recognized in *Pimpinello v. Swift*, 170 N.E. 530, 531 (N.Y.

1930), cited by Plaintiff, is that "[o]rdinarily, the signer of a deed or other instrument, expressive

of a jural act, is conclusively bound thereby" and that a signer who cannot read a contract is

negligent if he fails to "procure it to be read."  *Id.*  In *Pimpinello*, the court recognized an

exception where the party's *own lawyer* misrepresented the terms and import of the English

language contract.  *Id.* at 531-32.  That exception is inapposite here, where Simmtech is a

sophisticated commercial exporter that does so much business in the U.S. that it allegedly needed

to hedge its U.S. dollar exposure.  Moreover, Simmtech has made no allegation that any party

misrepresented the terms of the no-fiduciary representation.[14]

   A conspiracy to breach fiduciary duty requires that all alleged conspirators owe a

fiduciary duty to the plaintiff, and the SAC does not plead a fiduciary relationship between

Defendants and Simmtech.  (Def.Br. 24-25.)  Plaintiff responds that the "theory by Citi that all

conspirators must owe a fiduciary duty . . . is not New York law."  (Opp.Br. 22.)  But it is.  *See*

*Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 611 (S.D.N.Y. 2011); *Natural*

---

[13] The Court may consider the FX Confirmations, despite Plaintiff's decision not to attach them to its SAC, because the SAC "relies heavily upon [the] terms and effect" of the FX Confirmations (referenced 54 times), which renders them "integral to the complaint."  *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 302 (S.D.N.Y. 2011).

[14] *Bank of New York v. Cheng Yu Corp.*, 413 N.Y.S.2d 471, 472 (2d Dep't 1979), and *Watson v. Melnikoff*, 866 N.Y.S.2d 96 (Sup. Ct. 2008), cited by Plaintiff, involved specific misrepresentations as to the contractual text at issue.  Here, Simmtech has not alleged that Defendants misrepresented the Confirmations' fiduciary relationship waiver.  Moreover, Simmtech's many U.S. customers and visitors to its extensive English-language website, Simmtech Co., Ltd., http://eng.simmtech.com/about/about.aspx (last visited June 13, 2016), would be surprised to learn that it believes that its English-language contracts are unenforceable.

*Organics, Inc. v. Smith*, 2006 WL 2042489, at *2 (Sup. Ct. May 24, 2006).[15]

    **D.    Plaintiff's Original Fraud Claims Are Insufficiently Pleaded**

    Plaintiff's fraud claims fail to satisfy the heightened pleading standard of Fed. R.

Civ. P. 9(b).  In addition, Plaintiff has failed to adequately allege fraud with respect to several of

the purported misrepresentations and omissions surrounding the KIKOs.

    The SAC does not contain any loss causation allegations, *i.e.*, allegations showing

that any misrepresentation by CKI or any Defendant caused their losses, *Emergent Capital Inv.

Mgmt. v. Stonepath Grp.*, 343 F.3d 189, 197 (2d Cir. 2003), which the SAC admits were actually

caused by the market drop in the Korean won during the financial crisis.

    Plaintiff's argument that the Confirmations do not disclaim advice related to

"future exchange rate movements" (Opp.Br. 29), is belied by the Confirmations' text: "No

communication (written or oral) received from the other party will be deemed to be an assurance

or guarantee as to the expected results of the Transaction."  (Kaplan Decl. Ex. 1.)  Moreover,

CKI's statements of opinion as to the future performance of the Korean won are not actionable

because future exchange rate movements are the type of "inherently unknowable event: market

movements in the future," that cannot form the basis of a fraud claim absent some

"contemporaneous report, memorandum or other document that demonstrates that [defendants']

assumptions were not reasonable when made, or that it knew that to be the case."  *In re Aegon N

Sec. Litig.,* 2004 WL 1415973, at *11 (S.D.N.Y. June 23, 2004).

---

[15] Having "actual knowledge" of an alleged breach of fiduciary duty is required for liability under an aiding and abetting theory.  *In re Sharp Int'l Corp.*, 403 F.3d 43, 49-50 (2d Cir. 2005).  Plaintiff argues it is irrelevant that Defendants were unaware of Simmtech's identity when CKI was allegedly engaging in the conduct described in the SAC.  (Opp.Br. 24.)  According to Plaintiff, "actual knowledge" refers "not to the aider and abettor's knowledge of the victim, but to the aider and abettor's knowledge of the principal tortfeasor's wrongdoing." (Opp.Br. 24.)  But that is exactly the point.  If Defendants had no knowledge of Simmtech's identity, Defendants could not know of any fiduciary relationship between CKI and Simmtech, or that any such fiduciary relationship was being breached.  Without that knowledge, Defendants cannot have knowingly participated in the breach.  Restatement (Second) of Torts § 876(b) (1977), cited by Plaintiff, confirms this: "one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement . . . ."

Plaintiff's claims for conspiracy to commit fraud in the inducement and aiding and abetting fraud are also insufficiently pleaded. With respect to the aiding and abetting claim, Plaintiff fails to adequately plead that Defendants had knowledge of CKI's alleged wrongdoing. *See* Section III.C., *supra*; *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006). Similarly, as discussed above, the SAC does not contain allegations sufficient to support Plaintiff's claim that Defendants participated in the alleged wrongdoing. *Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 446 (S.D.N.Y. 2008).

### E. Plaintiff's Tortious Interference With Contract Claim Fails

Plaintiff bases its tortious interference with contract claim on its allegation that in January 2006, prior to executing the Confirmations, a CKI employee emailed Simmtech discussing the possibility of restructuring the KIKO trades in the future. (SAC ¶ 461.) Simmtech asks the Court to ignore the integration clause contained in each Confirmation, which states that it "evidences a complete and binding agreement between the parties as to the terms of the Transaction to which the Confirmation relates," because the alleged oral agreement predates the Confirmations, and thus "it cannot have 'modified' . . . the Confirmations." This ignores the purpose of integration clauses, which is to foreclose arguments that prior agreements modify the terms of fully integrated, later agreements. *Holloway v. King*, 161 F. App'x 122, 124-25 (2d Cir. 2005).

Separately, Plaintiff makes the absurd argument that Defendants lack standing to assert the statute of frauds as a defense because they are not parties to the alleged oral side agreement (while asking the Court to force Defendants to be treated as its contractual counterparties in the KIKO trades). (SAC ¶ 1,039; Opp.Br. 30.) The statute of frauds can be a valid defense to a tortious interference claim, even when asserted by a defendant not a party to the contract. (Def.Br. 30.) Plaintiff contends that the alleged oral side agreement satisfies the

13

statute of frauds because Simmtech allegedly would have had the right to restructure the KIKOs within one year of each KIKO's three-year term.  (Opp.Br. 31 citing SAC ¶ 461.)  But Plaintiff ignores its own allegation, just three paragraphs earlier, that "On or about January 18, 2006, Mr. Choi [of CKI] sent Mr. Park of Simmtech an email saying that once *one-half* of a two- or three-year term contract expired, Simmtech could terminate or restructure the contract."  (SAC ¶ 458 (emphasis added).)  Further, the SAC explicitly states that each of the KIKOs had a "three-year term . . . ."  (SAC ¶ 37.)  Thus, by Plaintiff's own admissions, its first chance to terminate or restructure would have occurred on September 24, 2007 (*i.e.*, 1.5 years after the January 18, 2006 alleged oral side agreement).[16]

### F.    Plaintiff's Equitable Claims Fail

Plaintiff cannot maintain a claim for "restitution" (SAC at 131), because restitution is the remedy for unjust enrichment, not a separate basis for liability (Def.Br. 31), and its claim for unjust enrichment is also deficient because the Confirmations are valid and enforceable contracts governing the subject matter of Plaintiff's unjust enrichment claim.  (*See* SAC ¶ 1037; *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 504 (S.D.N.Y. 2007).)  Plaintiff does not address this argument in its Opposition Brief.[17]

Plaintiff's "cause of action" for disgorgement and rescission should be dismissed because those are equitable remedies that may be imposed only once legal liability has been established, and there is no reason to grant Plaintiff either equitable remedy in light of the fact that it already sought relief in the Korean courts based on the KIKO transactions and lost.

---

[16] The alleged email describing the purported oral side agreement is not sufficient to satisfy the "written agreement" requirement of the statute of frauds.  (Opp.Br. 31.)  As alleged, the January 18, 2006 email does not set forth all of the material terms of the alleged contract, and is at most, an unenforceable agreement to agree.  *Trueforge Global Mach. Corp. v. Viraj Grp.*, 923 N.Y.S.2d 146, 147 (2d Dep't 2011).

[17] Instead, Plaintiff incorrectly states that Defendants argue that "Simmtech cannot claim in unjust enrichment because it seeks to recover in contract from CKI in the Korean Action," citing pages 30-31 of Defendants' Opening Brief.  (Opp.Br. 32.)  Nowhere in their discussion of unjust enrichment do Defendants make that argument.

(Def.Br. 32.)  Plaintiff does not address this argument in its Opposition Brief.[18]

G.      **Plaintiff's New Fraud Claims Fail**

A common-law fraud pleading requires facts showing "that the misrepresentations directly caused the loss about which plaintiff complains."  (Def.Br. 32-33 (quoting *Laub v. Faessel*, 745 N.Y.S.2d 534, 536 (1st Dep't 2002).)  Ignoring the plain language of *Laub*, Plaintiff argues that loss causation is limited to the securities law context.  (Opp.Br. 34.)  This argument overlooks the facts of *Laub*, which did not involve a federal securities law claim, but rather state common law tort claims.  *Laub*, 745 N.Y.S.2d at 536.[19]  Here, Plaintiff has alleged no facts showing that the fraud alleged in the New Fraud Claims—a failure to disclose alleged WM/Reuters rates manipulation and the alleged "reverse transactions" between CKI and Citibank, N.A. (SAC ¶¶ 1048-50, 1071, 1076-82, 1092-95)—caused any loss to Plaintiff.

Defendants' Opening Brief explains that the CFTC Order regarding alleged foreign exchange rate manipulation beginning in 2009 could not form the basis of a fraud claim with respect to the KIKOs, because CKI and Simmtech entered into the last KIKO trade in April 2008.  (Def.Br. 33-34; SAC ¶¶ 703, 707.)  Plaintiff's unsupported allegation that the alleged manipulation began in 2004 runs counter to the CFTC Order upon which Plaintiff relied in framing this very allegation.  (*See* SAC ¶ 900.)  In response, Plaintiff cites a document not even referenced in the SAC.  Plaintiff does not explain where in this 182-page document it finds support for its assertion that Defendants engaged in exchange rate manipulation prior to 2009.

---

[18] Instead, Plaintiff argues that it has adequately pleaded a claim for rescission based on a unilateral mistake. (Opp.Br. 33 citing *Cox v. Lehman Bros.*, 790 N.Y.S.2d 16 (1st Dep't 2005).)  But a contract cannot be rescinded on the basis of unilateral mistake alone, and instead "must be coupled with some fraud."  *Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc.*, 322 F. Supp. 2d 482, 498 (S.D.N.Y. 2004).  For the reasons discussed in Defendants' Opening Brief and in Section III.D., *supra*, Plaintiff has failed to adequately plead its fraud claims.
[19] Plaintiff also claims that "this Court distinguished *Laub* and refused to follow it in a non-securities context." (Opp.Br. 34 (citing *Amusement Indus. Inc. v. Stern*, 693 F. Supp. 2d 327, 353 (S.D.N.Y. 2010).)  But the *Amusement Industry* court cited *Laub* with approval, while concluding that the plaintiff adequately alleged loss causation because it pleaded facts showing that the alleged fraud was a proximate cause of the alleged damages.  *Id.* at 353.

Dated:   June 13, 2016
       New York, New York             Respectfully submitted,


MILBANK TWEED HADLEY & McCLOY LLP


By:  /s/ Daniel M. Perry
       Scott A. Edelman (SE 5247)
       (sedelman@milbank.com)
       Daniel M. Perry (DP 6966)
       (dperry@milbank.com)
       Jed M. Schwartz (JS 6184)
       (jschwartz@milbank.com)
       Taryn J. Gallup (TG 3200)
       (tgallup@milbank.com)
       Daniel B. Kaplan (DK 6363)
       (dkaplan@milbank.com)

       28 Liberty Street
       New York, New York 10005-1413
       Phone:  (212) 530-5000
       Fax:  (212) 530-5219

       *Attorneys for Defendants*

16